UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| DOUGLAS PAUL DELANEY and NANCY MARIE DELANEY, | Case No. 14-CV-0358 (PJS/LIB) |
| Plaintiffs, | ORDER |
| v. | |
| BELTRAMI COUNTY; CITY OF BLOOMINGTON; CITY OF BRAINERD; CARLTON COUNTY, CROW WING COUNTY; CITY OF EDEN PRAIRIE; CITY OF HANCOCK; KANABEC COUNTY; CITY OF MINNETONKA; CITY OF MOUND; METROPOLITAN AIRPORT COMMISSION; CITY OF ROSEMOUNT; ST. LOUIS COUNTY; CITY OF ST. PAUL; MICHAEL CAMPION, in his individual capacity as Commissioner of the Department of Public Safety; RAMONA DOHMAN, in her individual capacity as Commissioner of the Department of Public Safety; ENTITY DOES (1-30), including cities, counties, municipalities, and other entities sited in Minnesota; DEPARTMENT OF PUBLIC SAFETY DOES (1-30), acting in their individual capacities as officers, supervisors, staff, employees, independent contractors or agents of the Minnesota Department of Public Safety; JOHN AND JANE DOES (1-150), acting in their individual capacities as supervisors, officers, deputies, staff, investigators, employees or agents of the other governmental agencies, | |
| Defendants. | |

Kenneth H. Fukuda, Jonathan A. Strauss, Lorenz F. Fett, Jr., and Sonia Miller-Van Oort, SAPIENTIA LAW GROUP, PLLC, for plaintiffs.

Joseph E. Flynn and Jamie L. Jonassen, JARDINE, LOGAN & O'BRIEN, P.L.L.P., for defendants Beltrami County, Carlton County, Crow Wing County, and Kanabec County.

      Jon K. Iverson, Susan M. Tindal, and Stephanie A. Angolkar, IVERSON REUVERS CONDON, for defendant Cities of Bloomington, Brainerd, Eden Prairie, Hancock, Minnetonka, Mound, and Rosemount.

      Portia M. Hampton-Flowers, ST. PAUL CITY ATTORNEY'S OFFICE, for defendant City of St. Paul.

      Nick D. Campanario, ST. LOUIS COUNTY ATTORNEY'S OFFICE, for defendant St. Louis County.

      Ryan O. Vettleson and Timothy R. Schupp, GASKINS BENNETT BIRRELL SCHUPP L.L.P., for defendant Metropolitan Airports Commission.

      Oliver J. Larson, MINNESOTA ATTORNEY GENERAL'S OFFICE, for defendants Michael Campion and Ramona Dohman.

      Plaintiffs Douglas and Nancy Delaney bring this action against various public officials, cities, and counties, and the Metropolitan Airport Commission ("MAC"), alleging that defendants unlawfully disclosed or obtained information contained in their driver's-license records. The Delaneys bring claims under the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. §§ 2721 et seq., constitutional and statutory claims under 42 U.S.C. § 1983, and state-law claims of invasion of privacy.

      This matter is before the Court on defendants' motions to dismiss for failure to state a claim or, in the alternative, to sever. For the reasons that follow, the motions to dismiss are granted, and the complaint is dismissed with prejudice.

## I. BACKGROUND

      The Delaneys live in Cloquet, Minnesota, which is located in Carlton County. Compl. ¶¶ 41, 52. Neither Douglas nor Nancy has ever been charged with or suspected of committing a crime in any of the defendant cities or counties. Nor have they ever been involved in any civil,

criminal, administrative, or arbitral proceedings in or involving any of the defendant cities or counties. Compl. ¶¶ 68-148.

Nancy is currently employed as an office manager for a construction company. Compl. ¶ 49. From 1991 until he retired in 1999, Douglas was a law-enforcement officer for MAC. Compl. ¶¶ 44-45. Before working for MAC, Douglas was a deputy sheriff in the state of Wyoming. Compl. ¶ 43. Douglas's ex-wife, whom he divorced in 1993, has friends among law-enforcement personnel in Brainerd, Minnesota. Compl. ¶ 47-48. At some unspecified time, Douglas "voiced his concerns about certain local government actions in a publication that he believes aroused some interest and perhaps antipathy on the part of local government officials . . . ." Compl. ¶ 46.

The Delaneys filed this action after obtaining audits from the Minnesota Department of Public Safety showing multiple accesses of their driver's-license records. Including accesses by unnamed defendants, Douglas's record was accessed a total of 83 times and Nancy's record was accessed a total of 12 times during the period 2003 through 2012. Compl. ¶¶ 150-51 & Exs. A, B. The following chart reflects the number of times personnel from the named cities and counties and from MAC accessed the Delaneys' driver's-license records during that period:

|  | Douglas | Nancy |
|---|---|---|
| Beltrami County | 4 | 1 |
| Bloomington | 2 |  |
| Brainerd | 3 |  |
| Carlton County | 10 | 1 |
| Crow Wing County | 7 |  |
| Eden Prairie | 2 | 2 |

| Hancock | 3 | |
| --- | --- | --- |
| Kanabec County | 1 | 2 |
| Metropolitan Airport Commission | 1 | |
| Minnetonka | 3 | |
| Mound | 1 | |
| Rosemount | 2 | |
| St. Louis County | 2 | |
| St. Paul | 8 | 1 |

Compl. ¶¶ 66-146.  The Delaneys allege that none of these accesses was for a legitimate purpose.

II.  ANALYSIS

*A.  Standard of Review*

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.  In assessing the sufficiency of the complaint, a court may disregard legal conclusions that are couched as factual allegations.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

*B.  The DPPA*

The DPPA protects from disclosure the "personal information" obtained by a state department of motor vehicles in connection with a motor-vehicle record.  18 U.S.C. § 2721(a).

"[P]ersonal information" includes "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit ZIP code), telephone number, and medical or disability information . . . ." 18 U.S.C. § 2725(3).

Under the DPPA, it is "unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) . . . ." 18 U.S.C. § 2722(a). Section 2721(b), in turn, sets out fourteen permissible uses for personal information contained in driver's-license records. Permissible uses include "use by any government agency, including any court or law enforcement agency, in carrying out its functions . . . ." 18 U.S.C. § 2721(b)(1). The subject of a motor-vehicle record may sue any "person who knowingly obtains, discloses or uses [his] personal information, from a motor vehicle record, for a purpose not permitted under this chapter . . . ." 18 U.S.C. § 2724(a).

### 1.  Failure to State a Claim

The Court has previously held that, to state a DPPA claim under § 2724, a plaintiff must plead and prove that the defendant knowingly obtained, disclosed, or used her personal information *and* that he had an impermissible purpose for doing so. *Potocnik v. Carlson*, No. 13-CV-2093, 2014 WL 1206403, at *4 (D. Minn. Mar. 24, 2014). Before addressing whether the Delaneys have successfully pleaded these elements, the Court takes this opportunity to clear a little brush.

Both the Delaneys and defendants complain about each others' and the Court's terminology in discussing the DPPA. The Delaneys, for example, point out that the word "impermissible" does not appear in the DPPA, and therefore take issue with the Court's

requirement that they plead an impermissible purpose. Defendants, for their part, object to the Court's frequent use of the word "access" (which does not appear in the statute) as a synonym for the word "obtain" (which does appear in the statute).

All of this is nitpicking. First, "impermissible purpose" is obviously shorthand for — and is indistinguishable in meaning from — "a purpose not permitted under this chapter," which is the actual wording of § 2724(a). Second, the Court sees no difference between "obtain" and "access" in this context. The DPPA protects *information*, not just the medium in which the information is stored. Information is not a tangible object; it is "obtain[ed]" by a person when it enters that person's mind. "Accessing" a driver's-license record, therefore, is almost always synonymous with "obtaining" the information that the record contains. True, it is possible for a person to go to the trouble of gaining access to a driver's-license record but then never actually read it; for example, the information might pop up on the person's computer screen but, before the person can read it, he might be interrupted by an emergency call, and he might turn off his computer before he actually reads the information displayed on the screen. Presumably such cases are extraordinarily rare, however, and at this stage the Court must draw all reasonable inferences in the Delaneys' favor. Common sense dictates that someone who accesses a record almost always reads — that is, "obtains" — information contained in that record.

In addition, the Court notes that, to the extent that defendants argue that a plaintiff must allege an improper *use*, and not simply an improper *access*, their argument is belied by the plain language of §§ 2722(a) and 2724(a). Defendants point to § 2722(a), which prohibits any person from obtaining or disclosing personal information for an improper use. Because the obtainment or disclosure must be *for* an improper use, defendants argue, plaintiffs must *allege* an improper

use.  The Court disagrees.  It is perfectly comprehensible English to say that someone obtained information *for* a use even if they did not thereafter *put* the information to that use.  More importantly, satisfying one's idle curiosity — which is what the Delaneys imply that defendants were doing when they accessed the Delaneys' records — *is* a "use" (and one that is not permitted under the statute).

Turning back to the sufficiency of the Delaneys' allegations:  The Delaneys first argue that they need not identify defendants' *bad* purpose, but can simply allege that defendants did not have a *permissible* purpose for accessing their records.  In one sense, the Court agrees.  At the pleading stage, a plaintiff will often not know the precise impermissible purpose for which a defendant accessed her information.  For example, she may not know whether the defendant accessed her information because he wanted to ogle her photograph or instead because he was curious about where she lives.  The fact remains, however, that the plaintiff must plead facts that give rise to a plausible claim that the defendant *had* an impermissible purpose.  It is not sufficient to simply recite that the defendant obtained her information and that he did so for an impermissible purpose.  This is precisely the kind of "formulaic recitation of the elements of a cause of action" that, under *Twombly*, "will not do."  *Twombly*, 550 U.S. at 555.

The question, then, is what more is required to make out a plausible claim of impermissible access under the DPPA?  As *Iqbal* makes clear, determining whether a plaintiff has alleged sufficient facts to make out a plausible claim is a context-specific task that requires judges to draw on their experience and common sense.  *Iqbal*, 556 U.S. at 679.  Drawing bright lines is therefore difficult; each case turns on its facts.  That said, the basic fact pattern alleged

here — that (1) the Delaneys' records were accessed multiple times and (2) the Delaneys cannot think of any permissible reason why — is not sufficient.

Courts have noted that there are a "broad range of permissible uses that a governmental agency might have for motor vehicle data." *Kost v. Hunt*, 983 F. Supp. 2d 1121, 1134 (D. Minn. 2013). Given this context, allowing a plaintiff to state a claim based purely on multiple accesses generally sets too low a bar. This is not to say that such allegations would never be enough; there could be extreme cases in which there are so many accesses clustered in such a short period that, in the absence of any obvious legitimate basis for the accesses, it would be plausible to infer that something fishy was going on.

That is not the case here, however. Plaintiffs aggregate the total number of accesses to make it seem as though the number is unusually high, but they allege no facts that would provide any reason to believe that the accesses should be considered as a group. To the contrary, the accesses were conducted by over two dozen separate entities over a period spanning nearly ten years. Compl. Exs. A, B. The most any one named defendant accessed Douglas's information was ten times, and those accesses were spread over a period of nearly five years. Compl. Ex. A. Many named defendants accessed his information only once. As for Nancy, no named defendant accessed her information more than twice. Compl. Ex. B. Low numbers of accesses scattered among multiple unrelated defendants and spread over many years do not give rise to a plausible claim that any of the accesses was improper.

Nor are the Delaneys' additional allegations sufficient to "nudge[] their claims across the line from conceivable to plausible . . . ." *Twombly*, 550 U.S. at 570. In light of the large number of permissible uses of driver's-license information and the low number of accesses by any single

defendant, the fact that the Delaneys' records were accessed by name does not raise any red flags. Likewise, the fact that the Delaneys' records were sometimes accessed at the same time does not give the Court pause. The small handful of dual accesses were conducted sporadically over a number of years by various unrelated defendants. The dual accesses bear no temporal or other relation to each other and there are no facts alleged that would suggest any improper motive on the part of the various unrelated defendants who conducted them. (Moreover, as discussed below, any claim based on these dual accesses is time-barred.)

Nor do Douglas's individualized allegations — such as that his ex-wife has friends among law-enforcement personnel in Brainerd, or that he has criticized local government actions — add anything to the mix. Douglas and his ex-wife have been divorced for over two decades, and Douglas alleges no facts or circumstances that would make it plausible that the accesses connected to Brainerd have anything to do with his ex-wife. As for Douglas's published comments about local-government actions, Douglas does not identify the *decade*, much less the year, in which he made these comments. Nor does he identify the local government that was the subject of his comments, the nature of the comments, or the publication in which they appeared. Without any of these details — which would obviously be within Douglas's knowledge — there is no plausible connection between his published comments and the accesses alleged in the complaint. In short, the Delaneys have failed to plausibly allege that defendants accessed their driver's-license records for an impermissible purpose, and their DPPA claims must therefore be dismissed.

Because the Delaneys have failed to plausibly allege that any of the accesses was improper, their derivative DPPA claims against the Commissioners of the Department of Public

Safety also fail. In addition, the DPPA claims against the Commissioners fail for the reasons given in *Potocnik*. *See Potocnik*, 2014 WL 1206403, at *3-7.

## 2. Statute of Limitations

Although the Court has concluded that the Delaneys have failed to state a DPPA claim under Fed. R. Civ. P. 12(b)(6), it is also worth noting that the majority of their DPPA claims would be time-barred under the four-year statute of limitations in 28 U.S.C. § 1658(a). As the Court concluded in *Potocnik*, DPPA claims accrue, and thus the statute of limitations begins to run, when the plaintiff has a complete and present cause of action. *Potocnik*, 2014 WL 1206403, at *12. Under this "occurrence rule," DPPA claims based on accesses that occurred more than four years before the Delaneys filed this action are time-barred.

The Delaneys argue that the Court's ruling in *Potocnik* was erroneous and that the Court should reverse course and hold that the "discovery rule" applies — that is, that DPPA claims do not accrue until the plaintiff discovers (or reasonably should have discovered) her injury. The Delaneys point out that the Eighth Circuit has articulated a general presumption in favor of the discovery rule. As the Court explained in *Potocnik*, however, this precedent appears to be inconsistent with recent decisions of the Supreme Court. *Id.* at *8-9. But even assuming that there is such a presumption, the Court explained, the language and history of § 1658 — as well as the nature of DPPA claims — overcome that presumption and dictate the application of the occurrence rule. *Id.* at *8-12.

The Delaneys contend that one aspect of the Court's analysis in *Potocnik* was flawed. Specifically, the Delaneys contend that the legislative history of § 1658 does not weigh in favor of the occurrence rule. Instead, the Delaneys argue, the legislative history does not reveal

anything about Congress's intent concerning whether the occurrence rule or the discovery rule should apply. In other words, the Delaneys argue, the legislative history of § 1658 is merely a neutral factor.

This is such a minor point that it is hardly worth the effort of explaining. Nevertheless, because there are so many DPPA cases pending in this District, the Court will address it now, so that the Court does not need to address it in future cases.

In *Potocnik*, the Court observed that Congress amended § 1658 in 2002 to add a subsection (b) that explicitly provides that the discovery rule should apply to certain securities claims. *Id.* at *9. But Congress left subsection (a) intact, thus suggesting that Congress did not intend for the discovery rule to apply under subsection (a). *Id.* The Delaneys contend that this reasoning is flawed because subsection (b) contains both a two-year limitations period governed by the discovery rule (in subsection (b)(1)) and a five-year statute of repose governed by the occurrence rule (in subsection (b)(2)). Because subsection (b) includes both a discovery rule *and* an occurrence rule, the Delaneys argue, the addition of subsection (b) does not shed any light on Congress's intent with respect to the meaning of subsection (a).

At oral argument, the Court posited that, if the Delaneys are correct that the discovery rule applies under subsection (a), then the addition of subsection (b) would seem to have *shortened* the limitations period for securities-fraud actions. Specifically, if the Delaneys' reading of the statue is correct, subsection (a) would have permitted a plaintiff to bring a securities-fraud claim four years after discovery of the fraud. After subsection (b) was added, however, the same plaintiff would be required to bring a claim within two years after the discovery of the fraud and no later than five years after the occurrence of the fraud. As the Court

-11-

noted, this would have been inconsistent with Congress's intent in adding subsection (b) to the statute.

After oral argument, the Delaneys' counsel — who represent numerous plaintiffs in similar actions pending in this District — filed supplemental briefs in two similar cases pending before the undersigned. *See Potocnik v. Carlson*, No. 13-CV-2093, ECF No. 65; *Taylor v. City of Amboy*, No. 14-CV-0722, ECF No. 59. In these briefs, counsel argues that subsection (a) never applied to securities-fraud claims. Instead, before Congress added subsection (b) to § 1658, such claims were subject to a one-year statute of limitations and a three-year statute of repose. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 364 (1991). Consequently, counsel argues, adding subsection (b) did not shorten the statute of limitations for securities claims, and the Court's reasoning at oral argument was therefore based on a faulty premise. As a result, counsel argues, "Congress demonstrated no intent as to subsection (a) by the adoption of subsection (b)" in § 1658. *Potocnik*, No. 13-CV-2093, ECF No. 65 at 2.

The Court does not entirely agree with this conclusion. Regardless of the legislative history of § 1658, the fact remains that the text of subsection (b) demonstrates that Congress knows how to draft a statute that expressly incorporates the discovery rule — which is a crucial consideration when interpreting a statute that does *not* expressly incorporate the discovery rule. The Supreme Court has recently made clear that the occurrence rule is "standard" and the discovery rule is the "exception." *Gabelli v. Sec. & Exch. Comm'n*, 133 S.Ct. 1216, 1220-21 (2013). This Court is loath to find that a statute that does not even mention an "exception" to the "standard" rule nevertheless incorporates that exception, particularly when a closely related statute does explicitly incorporate the same exception.

But even accepting counsel's argument, all of this analysis is in the service of a minor point. At best, the Delaneys have demonstrated that the legislative history of § 1658 is a neutral factor that does not demonstrate Congress's intent, *one way or the other*, with respect to the meaning of § 1658(a). Even if the Delaneys are correct about the legislative history, (1) the text of § 1658(a) and (2) the nature of DPPA claims still dictate the application of the occurrence rule. Indeed, the Court was persuaded to apply the occurrence rule in *Potocnik* primarily on the basis of these two factors, not the legislative history. See *Potocnik*, 2014 WL 1206403, at *9-12. The Court adheres to its analysis of these factors and holds — as every judge in this District has held — that the occurrence rule applies to claims under the DPPA. In addition to being insufficiently pleaded, therefore, the Delaneys' DPPA claims are also mostly time-barred.

*C. Remaining Claims*

That leaves the Delaneys' § 1983 and invasion-of-privacy claims. The Court dismisses these claims essentially for the same reasons given in *Potocnik*. See *Potocnik*, 2014 WL 1206403, at *12-18. Only one matter merits comment:

Unlike the plaintiff in *Potocnik*, the Delaneys allege that defendants viewed medical information in their driver's-license records. Compl. ¶ 154. But the Delaneys do not describe that medical information or say anything else about it; instead, they generically refer to "medical information." As a result, the Delaneys have failed to plausibly allege constitutional or state-law invasion-of-privacy claims.

"'[T]o violate [a person's] constitutional right of privacy the information disclosed must be either a shocking degradation or an egregious humiliation of her to further some specific state interest, or a flagrant bre[a]ch of a pledge of confidentiality which was instrumental in obtaining

the personal information.'" *Eagle v. Morgan*, 88 F.3d 620, 625 (8th Cir. 1996) (quoting *Alexander v. Peffer*, 993 F.2d 1348, 1350 (8th Cir. 1993) (alterations in original)). Under this strict standard, not all disclosures of medical information violate the Constitution. *See Cooksey v. Boyer*, 289 F.3d 513, 516-17 (8th Cir. 2002) (no constitutional violation where defendant disclosed that plaintiff was undergoing psychological treatment for stress because "the information disclosed and the circumstances of disclosure [were] neither shockingly degrading or egregiously humiliating"); *Tart v. Norris*, 14 Fed. Appx. 743 (8th Cir. 2001) (per curiam) ("we agree with the district court that Harris's disclosure of Tart's drug test results to a third party did not arise to the level of a constitutional violation").

Without any indication of what kind of medical information might be at issue, the Delaneys cannot state a plausible claim that any obtainment or disclosure of such information — which could be as innocuous as the need for eyeglasses — violated their constitutional right to privacy. For the same reason, the Delaneys have failed to allege a plausible invasion-of-privacy claim under state law. *See Swarthout v. Mut. Serv. Life Ins. Co.*, 632 N.W.2d 741, 744-45 (Minn. Ct. App. 2001) (requiring an intrusion that is "highly offensive to the ordinary reasonable [person], as the result of conduct to which the reasonable [person] would strongly object" (alterations in original, citation and quotations omitted)). These claims are therefore dismissed.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motions to dismiss [ECF Nos. 14, 22, 33, 39, 64, 75] are GRANTED.

2. To the extent that defendants seek to sever, their motions are DENIED AS MOOT.

3. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  October 21, 2014                    s/Patrick J. Schiltz
                                            Patrick J. Schiltz
                                            United States District Judge